STATE, JANE RYERSON ET AL., PROSECUTORS, v. THE CITY OF PASSAIC.

Commissioners appointed by the Supreme Court, under section ten of the *certiorari* act, (*Rev.*, p. 99,) to make a new assessment of the costs and expenses of regulating and grading a street, under sections nineteen and twenty of the charter of the village of Passaic, (*Pamph. L.*, 1871, p. 619,) have no power to estimate the value of land taken, and make allowance therefor to the owner, in determining the amount to be assessed against him for benefits.

On *certiorari*.    In matter of assessment.

Argued at June Term, 1877, before Justices SCUDDER, DIXON and REED.

For the prosecutors, *Comstock.*

For the defendant, *T. M. Moore.*

The opinion of the court was delivered by

DIXON, J.    After the decision of this court in *State, Ryerson, pros., v. City of Passaic,* 9 *Vroom* 171, setting aside, as to the prosecutors, an assessment for the grading, &c., of the river road, the court, on the application of the city, vacated the whole assessment, and appointed commissioners to make a new one, in accordance with the provisions of section ten of the *certiorari* act. *Rev.*, p. 99. This new assessment having been made and then confirmed by the city council, is now brought before the court for review.

The rule of this court, directing a new assessment, commanded the commissioners to make an assessment of the cost and expenses of regulating and grading the river road.

Among the proceedings of the municipality, appear two ordinances: one passed October 31st, 1870, providing for widening the road to sixty feet, establishing a grade, grading

and flagging side-walks, and laying cross-walks; and the other, passed March 17th, 1873, providing for grading the street, flagging the side-walks, and laying cross-walks. In fact, the street was actually widened and graded, and the side-walks and cross-walks were laid, *pari passu*, after the adoption of the latter ordinance. At the time of considering the former *certiorari*, the court seems to have been uncertain as to which of these ordinances was the basis of the assessment under consideration. The opinion states that the ordinance authorizing the improvement was passed March 17th, 1873, and yet it also states that the commissioners erred in not showing, in their report, the value of land taken, although the ordinance of 1873 did not authorize the taking of land, while that of 1870 did. It is still not determinable, by any evidence before us, under which ordinance some of this work, viz., the side-walks and cross-walks, was done. We are not, however, obliged to ascertain this fact in order to conclude whether the present assessment should stand or fall.

By the charter, (*Pamph. L.*, 1871, *p.* 619, §§ 19, 20,) according to which these improvements were initiated, the scheme of street improvements was this: before the work was entered upon, a preliminary estimate of its cost was made, which showed, in cases where land was to be taken, the value of that land and the damages done by taking it; and this estimated cost was assessed upon the lands to be benefited, in proportion to the benefits to be received. If the improvement was prosecuted, the value and damages so indicated became the fixed amount of compensation to the land-owners, and were to be paid to them by the council; and upon the completion of the improvement, the actual cost, (including, of course, these damages and value,) was assessed on the same lands, and in the same proportions as, preliminarily, the estimated cost had been assessed.

In this scheme, therefore, there are, where lands are taken, both an award, (for lands and damages,) and an assessment, (of costs, for benefits.) The only thing with which the court, in the former suits, interfered, was the assessment. If the pro-

ceedings were under the ordinance of 1870, so that lands were taken, and an award made, that award was not brought up. If they were under the ordinance of 1873, no award was proper.

When, therefore, the court appointed the present commissioners to make a new assessment, it did not commit to them any power of adjudicating as to the value of lands taken or damages done by taking land. It simply directed them to assess costs and expenses, and if among these costs and expenses were such value and damages, they were already ascertained by the preliminary report; or if they were not, then the commissioners had no power to estimate them. Nor, in the making of any assessment under this charter, can such value and damages be taken into consideration in determining what benefits are conferred by an improvement. The charter requires the sum of these damages and value to be paid by the council to the owners, and they cannot, therefore, save as a part of the expense, enter into any lawful assessment for benefits.

The evidence in this case, however, clearly shows that the commissioners whom we appointed mistook their duty in this regard, and endeavored to assess upon the property-owners such an amount as would represent the net benefit which they received after making them proper allowances for the value of land taken and damages done by taking it. The *report* of the commissioners contains no appraisement of land taken, but the testimony of the two commissioners who were examined leaves no room for doubt on the point. One of them says, " We discussed the amount of benefits that each property-owner had received from the improvement, and estimated the value of the lands that were taken for the improvement for widening the street, and the injury done to the property by making the improvement. * * * To arrive at the absolute benefit or advantage the improvement conferred upon each property-holder, we had to take into consideration all his losses—whether of ground, or trees, or damage in the way of access to his property which remained—and consider

whether, upon the whole, he was made better or worse off by the improvement." In response to the question, "Did you report the amount of damages to each owner, in your final report?" he answers, "Yes; by the reduced amount of each individual assessment from what it would have been, had we not taken into consideration his particular damage in those cases where property had been destroyed or injured by land taken." In the examination of the other commissioner appear the following questions and answers: "Q. In estimating the damage done to each of the several lots, did you take into consideration the quantity of land taken?" "A. Yes." "Q. Did you ascertain the amount of damages to each lot, exclusive of benefits?" "A. Yes." "Q. Did you find the gross amount of benefit accruing to each lot—I mean before considering the amount of damages?" "A. No; I think we considered the damage first; when I say damage, I mean for land taken—for trees, embankments, and include everything." "Q. Did you estimate damages alone, and find the amount in case of each lot?" "A. Yes; we found the full amount of damages, and the full amount of benefits for grading, and deducted the one from the other, and thereto added the benefits received for the side-walk, &c." "Q. Please state or illustrate how you determined the net benefit that any particular lot received?" "A. By considering what the value of the lot would be if the improvement had not been made, then considering the value of the lot as the improvement now is, we found out the damages of every kind, deducted the same from the benefits, leaving the net benefit, if any." "Q. What was the object that the commissioners had in considering the amount of land taken for the improvement of the street?" "A. So that no property-owner should be assessed more than his net benefit."

These citations clearly show that the commissioners, in determining the amount to be assessed upon any person whose lands had been taken for widening the road, deducted the value of those lands from the amount which, in their judgment, represented his benefits. The effect of this is, that if

this value was fixed in the preliminary report and paid to the owners, as the charter required, they have been twice compensated, and part of their burden has been cast upon those whose lands were not taken. If the statute has not been followed in this particular, the owners will retain their rights, notwithstanding these proceedings. In any case, the present commissioners have exercised powers not delegated to them, and their action must, therefore, be set aside.

The assessment must be vacated, with costs.